UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **MYBUSINESSLOAN.COM, LLC**, | ) |
| | ) |
| Plaintiff, | )   Case No: |
| | ) |
| v. | )   **COMPLAINT FOR: Breach of Contract** |
| | ) |
| **CONOR MCINERNEY** and **COURTNEY MCINERNEY**, | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |

## COMPLAINT

Plaintiff, MyBusinessLoan.com, LLC d/b/a Dealstruck, hereby sues Conor McInerney and Courtney McInerney, and alleges:

## NATURE OF THE ACTION

1.　　This is a civil action for breach of contract against guarantors of a loan agreement.

## PARTIES

2.　　MyBusinessLoan.com, LLC ("Lender") is a limited liability company organized and existing under the laws of the State of California and is located at 1901 Camino Vida Roble, Suite 120, Carlsbad, California 92008.

3.　　Conor McInerney is *sui juris* and a resident of the state of Massachusetts.

4.　　Courtney McInerney is *sui juris* and a resident of the state of Massachusetts.

## JURISDICTION AND VENUE

5.　　Pursuant to 28 U.S.C. § 1332, this Court has original jurisdiction over the subject matter of this action because there is diversity of citizenship between the parties and the matter in controversy exceeds $75,000.00, exclusive of interest and costs.

6.　　The parties' contracts, identified herein and attached hereto, specifically provide that venue is proper in this Court and that the Defendants have consented to the jurisdiction, including personal jurisdiction, of this Court.

1

**GENERAL ALLEGATIONS**

7.      Con-Serve Energy, Inc. is a Massachusetts corporation (hereinafter, "Borrower").

8.      Defendant Conor McInerney is Borrower's President and Treasurer.  Defendant Courtney McInerney is Borrrower's Secretary and Vice President.

9.      On or about April 23, 2014, Lender and Borrower entered into loan documents consisting of, among other documents, (1) that certain Loan and Security Agreement attached as Exhibit A ("Loan and Security Agreement"); (2) that certain Note attached as Exhibit B ("Note"); (3) that certain Final Loan Request attached as Exhibit C ("Final Loan Request"); and (4) that certain Borrower Agreement attached as Exhibit D.  Collectively, the Loan and Security Agreement, Note, Final Loan Request, and Borrower Agreement shall be referred to herein as the "Loan Documents".

10.     On or about April 23, 2014, Borrower executed the Final Loan Request seeking to borrow the principal sum of $150,000 from Lender.  The full amount of the loan was approved by Lender and Borrower's indebtedness is evidenced by the Note (the "Loan").

11.     The Final Loan Request sets forth the terms of the Loan.  Specifically, the Loan is for a term of 36 months with an interest rate of 16%.  Borrower is obligated to make 34 monthly payments in the amount of $5,519.07.  The Loan also had an origination fee of $6,000.00.

12.     Section 8 of the Loan and Security Agreement specifically provides that if "Borrower shall fail to pay when due any amount of principal, interest or the Origination Fee hereunder or other amount payable hereunder" such failure "shall constitute an 'Event of Default.'"

13.     Section 9 of the Loan and Security Agreement provides that upon the occurrence of an Event of Default, Lender may immediately accelerate and collect on the entire outstanding balance of the Loan:

> Lender may without notice or demand declare the entire unpaid principal amount of the Loans, all interest accrued and unpaid thereon and all other amounts payable hereunder to be forthwith due and payable (*provided*

2

*that*, upon the occurrence of any Event of Default under **Section 8(e)** or **(f)**, such acceleration shall be automatic), whereupon all unpaid principal of the Loans, all such accrued interest and all such other amounts shall become and be forthwith due and payable, without presentment, demand, protest, notice of protest and non-payment, notice of default, notice of acceleration or intention to accelerate, or further notice of any kind, all of which are hereby expressly waived by Borrower, and exercise any or all of Lender's rights and remedies under the Loan Documents, the UCC and other applicable law.

14.     Borrower has ceased making payments on the Loan and is in default of the Loan Documents.

15.     The total outstanding balance on the Loan owed to Lender is $102,059.98.

16.     Further, Sections 11 and 12 of the Loan and Security Agreement require Borrower to indemnify and reimburse Lender for any and all attorney's fees and other expenses incurred in the collection of the Loan upon an Event of Default.

17.     Finally, Section 2(f) of the Loan and Security Agreement states that "upon the occurrence and during the continuance of an Event of Default" the interest rate of the loan "shall accrue at a rate equal to the Interest Rate plus 5.0% *provided* that such default rate of interest, when combined with all fees that may be characterized as interest, will not exceed the Maximum Rate."   As Borrower is in default, this higher interest rate should be added to Borrower's outstanding indebtedness to Lender under the Loan Documents.

18.     On or about April 23, 2014, Conor McInerney and Courtney McInerney (together, "Guarantors") executed a Guaranty (the "Guaranty") "in order to induce Lender to extend credit to Borrower…." through which they "unconditionally and irrevocably guarantee[] to Lender the full and prompt payment when due […] and performance of all indebtedness, liabilities and other obligations of Borrower to Lender under or in connection with the Loan and Security Agreement."  A copy of the Guaranty is attached as Exhibit E.

19.     Pursuant to Section 13 of the Guaranty, "Guarantor agrees to pay on demand all reasonable costs and expenses of Lender and reasonable fees and disbursements of counsel in connection with the enforcement, or preservation of any rights under, this Guaranty."

20.     On January 28, 2014, Lender and Borrower also entered into (1) that certain Credit Line Master Agreement attached as Exhibit F (the "Credit Line Master Agreement"); (2) that certain copy of Terms and Conditions attached as Exhibit G ("Terms and Conditions"); and (3) that certain Certified Copy of Resolutions attached as Exhibit H.

21.     On May 5, 2015, the Credit Line Master Agreement was amended through that certain Amendment to Credit Line Master Agreement attached as Exhibit I (the "Credit Line Amendment). Collectively, the Credit Line Master Agreement, Terms and Conditions, the Certified Copy of Resolutions, and the Credit Line Amendment shall be referred to herein as the "Credit Line Documents".

22.     Section 1 of the Credit Line Master Agreement states that the "Credit Line Master Agreement incorporates by reference the Terms and Conditions fully set forth thereof."

23.     Pursuant to section 2.1 of the Terms and Conditions, the parties agreed that Lender would "from time to time, at the request of Borrower, make advances ("Advances") to Borrower so long as before and after such Advance, the Obligations do not exceed the lesser of (a) the Maximum Amount, and (b) the Borrowing Base."

24.     The Credit Line Documents, as amended, define the "Maximum Amount" as $150,000, and the "Borrowing Base", in relevant part, as 85% of Eligible Accounts.

25.     The Credit Line Master Agreement states that "repaid amounts [could] be re-borrowed."

26.     Further, section 3 of the Credit Line Master Agreement requires Borrower to pay to Lender, when due, "all accrued and unpaid interest on the Advances, computed at the Interest Rate[.]"  The Credit Line Documents, as amended, define the "Interest Rate" as Index plus 18.99%, per annum, not to exceed the maximum interest rate allowed by law.

27.     Borrower has ceased making payments under the Credit Line Documents and is in default thereof.

28.     A balance of $91,984.31 is currently outstanding under the Credit Line Documents.

29.     Section 2.7 of the Terms and Conditions states that Lender may increase the interest rate on any loans or advances made to Borrower under the Credit Line Documents to the Default Rate upon an Event of Default. The Default Rate is defined as "12.00% per annum in excess of the Interest Rate."  As Borrower is in default, this higher default interest rate should be added to Borrower's outstanding indebtedness to Lender under the Credit Line Documents.

30.     Section 12.18 of the Terms and Conditions requires that Borrower "shall pay or reimburse Lender on demand for all reasonable costs, fees and expenses incurred by Lender or for which Lender becomes obligated in connection with the collection of the Obligations or enforcement of this Agreement or the other Loan Documents […] including reasonable consultants' and attorneys' fees and time charges of counsel to Lender."

31.     Significantly, pursuant to Section 12.3 of the Terms and Conditions, Borrower has expressly waived its right, and the right of any Guarantors, to assert any defenses or counterclaims in this action related to Lender's enforcement of the Credit Line Master Agreement:

> BORROWER, ON BEHALF OF ITSELF AND ANY GUARANTOR OF ANY OF THE OBLIGATIONS, WAIVES EVERY PRESENT AND FUTURE DEFENSE, CAUSE OF ACTION, COUNTERCLAIM OR SETOFF WHICH BORROWER MAY NOW HAVE OR HEREAFTER MAY HAVE TO ANY ACTION BY LENDER IN ENFORCING THIS AGREEMENT. PROVIDED LENDER ACTS IN GOOD FAITH, BORROWER RATIFIES AND CONFIRMS WHATEVER LENDER MAY DO PURSUANT TO THE TERMS OF THIS AGREEMENT. THIS PROVISION IS A MATERIAL INDUCEMENT FOR LENDER GRANTING ANY FINANCIAL ACCOMMODATION TO BORROWER. (emphasis added).

32.     Additionally, Conor McInerney and Courtney McInerney executed that certain Continuing Guaranty (the "Continuing Guaranty") on or about January 28, 2014.  Through the

Continuing Guaranty, Guarantors "unconditionally guarant[eed] […] the full and prompt payment when due […] of all indebtedness, liabilities and obligations of every kind and nature of Borrower to Lender howsoever created, arising or evidenced …."  A copy of the Continuing Guaranty is attached as Exhibit J.

33.    Lender has performed each and every one of its obligations under the Loan Documents, the Credit Line Documents, the Guaranty and the Continuing Guaranty, and has attempted to collect the monies it is owed from Borrower and Guarantors who remain in default.

34.    Guarantors expressly waived their rights to a trial by jury in both the Guaranty and the Continuing Guaranty.

35.    All conditions precedent to bringing this action have occurred or been waived. Lender has retained counsel to represent it in this matter and is obligated to pay its counsel a reasonable fee for its services.

## COUNT I: BREACH OF CONTRACT AGAINST GUARANTORS (GUARANTY)

36.    The allegations contained in paragraphs 1-35 above are hereby re-alleged and incorporated as if fully set forth herein.

37.    The Guaranty requires Guarantors to make all payments under the Loan Documents if Borrower fails to perform its obligations or defaults under the Loan Documents.

38.    Borrower is in breach of the Loan Documents thereby causing Lender damage for which Guarantors are jointly and severally liable to Lender.

39.    Borrower's indebtedness to Lender has not been satisfied by Guarantors and, as a result, Guarantors are in breach of the Guaranty.

40.    As a direct and proximate result of Guarantors' breach of the Guaranty, Lender has been damaged in an amount of at least $102,059.98, together with interest at the agreed upon default rate.

**WHEREFORE**, MYBUSINESSLOAN.COM, LLC respectfully requests the Court:

A.    enter judgment against Guarantors for damages including general, special, consequential and compensatory damages in an amount of at least $102,059.98;

B.      award Lender interest, including pre-judgment interest, at the maximum legal rate;

C.      award Lender the amount of its reasonable attorneys' fees and costs and for costs of suit; and

D.      award Lender such other and further relief as the Court deems just and proper.

## COUNT II: BREACH OF CONTRACT AGAINST GUARANTORS (CONTINUING GUARANTY)

41.     The allegations contained in paragraphs 1-40 above are hereby re-alleged and incorporated as if fully set forth herein.

42.     The Continuing Guaranty requires Guarantors to make all payments under the Credit Line Documents and Loan Documents if Borrower fails to perform its obligations.

43.     Borrower is in breach of the Credit Line Documents and the Loan Documents thereby causing Lender damage for which Guarantors are jointly and severally liable to Lender.

44.     Borrower's indebtedness to Lender has not been satisfied by Guarantors and, as a result, Guarantors are in breach of the Continuing Guaranty.

45.     As a direct and proximate result of Guarantors' breach of the Continuing Guaranty, Lender has been damaged in an amount of at least $91,984.31, together with interest at the agreed upon default rate.

**WHEREFORE**, MYBUSINESSLOAN.COM, LLC respectfully requests the Court:

A.      enter judgment against Guarantors for damages including general, special, consequential and compensatory damages in an amount of at least $91,984.31;

B.      award Lender interest, including pre-judgment interest, at the maximum legal rate interest;

C.      award Lender the amount of its reasonable attorneys' fees and costs and for costs of suit; and

D.      award Lender such other and further relief as the Court deems just and proper.


                                     Respectfully submitted,

                             By:    /s/Jacqueline M. James, Esq.
                                     Jacqueline M. James, Esq. (1845)
                                     The James Law Firm, PLLC
                                     445 Hamilton Avenue
                                     Suite 1102
                                     White Plains, New York 10601
                                     T: 914-358-6423
                                     F: 914-358-6424
                                     E-mail: jjameslaw@optonline.net
                                     *Attorneys for Plaintiff*