## LOAN AND SECURITY AGREEMENT

THIS LOAN AND SECURITY AGREEMENT dated as of 4/23/2014 (this "Agreement") is entered into between MyBusinessLoan.com LLC, a California limited liability company ("Lender"), and Con-Serve Energy Inc. a Massachusetts corporation (""Borrower"").

Borrower and Lender hereby agree as follows:

**SECTION 1   Definitions; Interpretation.** As used in this Agreement, the following terms shall have the following meanings:

"*ACH*" has the meaning specified in **Section 2(e)**.

"*Agreement*" has the meaning specified in the preamble.

"*Borrower*" has the meaning specified in the preamble.

"*Borrower Agreement*" means that certain Borrower Agreement between Borrower and Lender, as the same may be amended, restated, supplemented, or otherwise modified from time to time.

"*Co-Borrower*" has the meaning specified in the preamble.

"*Collateral*" has the meaning specified in **Section 3**.

"*Collateral Documents*" means all agreements, instruments or documents that create or purport to create a Lien or guaranty in favor of Lender and all filings, documents, instruments and agreements made or delivered pursuant thereto (including, without limitation, any Guarantor Security Agreement).

"*Commitment*" has the meaning specified in **Section 2(c)**.

"*Debtor Relief Laws*" means the Bankruptcy Code of the United States, and all other liquidation, conservatorship, bankruptcy, assignment for the benefit of creditors, moratorium, rearrangement, receivership, insolvency, reorganization, or similar debtor relief laws of the United States or other applicable jurisdictions from time to time in effect and affecting the rights of creditors generally.

"*Designated Account*" has the meaning specified in **Section 2(e)**.

"*Disclosures*" means the Privacy Policy, Terms of Use and Borrower Agreement.

"*Event of Default*" has the meaning specified in **Section 8**.

"*Final Loan Request*" has the meaning specified in **Section 2(b)**.

"*Funding Date*" means the date that net Loan proceeds are received by Borrower in the Designated Account, after a Loan is funded under **Section 2(c)** subject to the terms and conditions of this Agreement.

"*GAAP*" means generally accepted accounting principles in the United States as in effect from time to time.

"*Guarantor*" means any guarantor of the Obligations acceptable to Lender.

"*Guarantor Security Agreement*" means a security agreement made by a Guarantor that is not a natural person in favor of Lender, as the same may be amended, restated, supplemented, or otherwise modified from time to time.

"*Guaranty*" means a guaranty made by each Guarantor party thereto in favor of Lender, as amended, restated, supplemented or otherwise modified from time to time.

"*Indemnitees*" has the meaning specified in **Section 12**.

"*Initial Loan Request*" means a loan request submitted by Borrower to Lender in form and substance satisfactory to Lender.

"*Interest Rate*" has the meaning specified in **Section 2(f)**.

"*Investor*" means any Person approved by Lender to make investments in certain equity interests of Lender in connection with a Loan.

"*Lender*" has the meaning specified in the preamble.

"*Lien*" means any mortgage, deed of trust, pledge, security interest, assignment, deposit arrangement, charge or encumbrance, lien (statutory or other), or other preferential arrangement (including, without limitation, any conditional sale or other title retention agreement, any financing lease having substantially the same economic effect as any of the foregoing or any agreement to give any security interest).

"*Loan*" has the meaning specified in **Section 2(c)**.

"*Loan Documents*" means, collectively, this Agreement, all Notes, all Guaranties, the Loan Requests, the Borrower Agreement, the Collateral Documents and all other agreements, instruments and documents now or hereafter executed and delivered to Lender with respect to this Agreement, the transactions contemplated hereby or any other Loan Document, in each case as amended, restated, supplemented or otherwise modified from time to time.

"*Loan Request*" means any Initial Loan Request or Final Loan Request.

"*Manager*" means Dealstruck, Inc., a Delaware corporation.

"*Material Adverse Effect*" on any Person means a material adverse effect on the operations, properties, business, condition (financial or otherwise) or prospects of such Person.

"*Maturity Date*" has the meaning specified in **Section 2(a)**.

"*Maximum Rate*" means the maximum interest rate, if any, that at any time, or from time to time, may be contracted for, taken, reserved, charged, or received on the Loan under the laws which are presently in effect of the United States and any jurisdiction thereof applicable to Lender and such indebtedness or, to the extent permitted by law, under such applicable laws of the United States and any jurisdiction thereof which may hereafter be in effect and which allow a higher maximum interest rate than applicable laws now allow. To the extent federal law (including, without limitation, 12 U.S.C. Section 85, as now enacted or hereafter amended) permits Lender to contract for, charge or receive a higher rate of interest or permits Lender to contract for, charge or receive interest at a higher rate permitted by the laws of another jurisdiction, such federal law (and, if appropriate, the law of such other jurisdiction) will be applicable in determining the Maximum Rate, instead of the laws of any other jurisdiction.

"*Minimum Commitment Amount*" means 100% of the requested Loan amount.

"*Note*" means a promissory note made by Borrower in favor of Lender, as amended, restated, supplemented or otherwise modified from time to time.

"*Obligations*" means all indebtedness, liabilities and other obligations of Borrower or any Guarantor to each of Lender and Manager, whether created under, arising out of or in connection with this Agreement, any Note, any of the other Loan Documents or otherwise, including, without limitation, all unpaid principal of the Loan, all interest accrued thereon, all fees and all other amounts payable by Borrower or any Guarantor to Lender under or in connection with any Loan Agreement, whether now existing or hereafter arising, and whether due or to become due, absolute or contingent, liquidated or unliquidated, determined or undetermined, and including interest that accrues after the commencement by or against Borrower or any Guarantor of any bankruptcy or insolvency proceeding naming such Person as the debtor in such proceeding.

"*Origination Fee*" has the meaning specified in **Section 2(e)**.

"*Permitted Lien*" means: (i) any Lien in favor of Lender to secure the Obligations of Borrower to Lender under the Loan Documents; (ii) Liens for taxes, fees, assessments or other governmental charges or levies, either not delinquent or being contested in good faith by appropriate proceedings and which are adequately reserved for in accordance with GAAP; (iii) Liens of materialmen, mechanics, warehousemen, carriers or employees or other like Liens arising in the ordinary course of business and securing obligations either not delinquent or being contested in good faith by appropriate proceedings which are adequately reserved for in accordance with GAAP and which do not in the aggregate materially impair the use or value of the property or risk the loss or forfeiture of title thereto; (iv) Liens consisting of deposits or pledges to secure the payment of worker's compensation, unemployment insurance or other social security benefits or obligations, or to secure the performance of bids, trade contracts, leases, public or statutory obligations, surety or appeal bonds or other obligations of a like nature, in each case incurred in the ordinary course of business; (v) statutory landlord's Liens under leases to which Borrower is a party; (vi) Liens (A) upon or in any equipment, computers or software acquired or held by Borrower or any of

**EXHIBIT "A"**

its Subsidiaries or tenant improvements implemented by Borrower or any of its Subsidiaries to secure the purchase price of such equipment, computers or software or Indebtedness incurred solely for the purpose of financing the acquisition of such equipment, computers or software or the implementation of such tenant improvements, or (B) existing on such equipment, computers or software at the time of its acquisition; *provided* that, the Lien is confined solely to the property so acquired and improvements thereon, or the proceeds of such equipment, computers, software or tenant improvements; and (vii) Liens on deposit accounts or securities accounts (and the contents thereof), in favor of the financial institution at which such account is located, arising in the ordinary course of business and pursuant to such financial institution's standard terms and conditions governing such account.

"*Person*" means any natural person, corporation, limited liability company, trust, joint venture, association, company, partnership, governmental agency or authority or other entity.

"*Platform*" means the website lending platform at www.dealstruck.com, including any subdomains thereof.

"*Privacy Policy*" means the privacy policy delivered and/or made available to Borrower, as the same may be amended, restated, supplemented, or otherwise modified from time to time.

"*Subsidiary*" of a Person means any corporation, association, partnership, limited liability company, joint venture or other business entity of which more than 50% of the voting stock or other equity interest is beneficially owned, directly or indirectly, by such Person or one or more of the other Subsidiaries of such Person or a combination thereof. Unless otherwise specified, all references herein to a "Subsidiary" or "Subsidiaries" shall refer to a Subsidiary or Subsidiaries of Borrower.

"*Terms of Use*" means the terms of use delivered and/or made available to Borrower, as the same may be amended, restated, supplemented, or otherwise modified from time to time.

"*UCC*" means the Uniform Commercial Code as the same may, from time to time, be in effect in the State of New York or the Uniform Commercial Code or any successor provision thereof (or similar code or statute) of another jurisdiction, to the extent it may be required to apply to any portion of the Collateral. Where applicable and except as otherwise defined herein, terms used in this Agreement shall have the meanings assigned to them in the UCC. In this Agreement, (i) the meaning of defined terms shall be equally applicable to both the singular and plural forms of the terms defined; and (ii) the captions and headings are for convenience of reference only and shall not affect the construction of this Agreement.

**SECTION 2    Loan.**

(a)    *Initial Loan Request; Lender Review*. To request a Loan, Borrower shall submit an Initial Loan Request to Lender, which Initial Loan Request shall include, among other items, the requested term of the Loan (the date that is the last day of the period beginning on the date on which a Loan is funded (if funded) and ending on the last day of such requested term, the "*Maturity Date*" of such Loan), and an acceptable range for the annual interest rate. Borrower acknowledges that Lender reserves the right to review and verify all information in the Initial Loan Request and such other information as Lender may request in connection with such Initial Loan Request. Borrower hereby authorizes Lender to request and obtain data from third parties to verify any information provided to Lender, including in the Initial Loan Request. Borrower acknowledges that Lender may approve or terminate the Initial Loan Request in its sole discretion.

(b)    *Final Loan Request; Investor Review*. Upon review and in Lender's sole discretion, Lender may modify the terms of any Initial Loan Request, including, without limitation, by inserting the Interest Rate determined in accordance with **Section 2(f)** and the Origination Fee determined in accordance with **Section 2(e)** (as so modified, a "*Final Loan Request*"), and subsequently permit Borrower to post such Final Loan Request on the Platform for Investor review. Additionally, Lender shall have received executed copies of such Loan Documents, and shall have received such other documents and evidence of completion of such matters, in each case in form and substance satisfactory to Lender, as Lender may deem necessary, appropriate or advisable prior to the posting of any such Final Loan Request. Borrower posting of any such Final Loan Request shall evidence Borrower's acknowledgment and agreement with the terms thereof. Investors may commit funds to purchase certain equity interests in Lender relating to Lender's rights in the Loan. Borrower agrees and acknowledges that any Investor's commitment to purchase any such equity interests does not confer any rights upon Borrower and each Investor shall make its own decision as to whether to purchase any such equity interests. BORROWER ACKNOWLEDGES AND AGREES THAT NEITHER LENDER NOR ANY OTHER PERSON WARRANTS OR GUARANTEES THAT ANY LOAN REQUEST OF BORROWER WILL BE FUNDED OR THAT BORROWER WILL RECEIVE A LOAN AS A RESULT OF SUBMITTING ANY LOAN REQUEST.

(c)    *Loan Funding*. If, within 30 days following the posting of a Final Loan Request on the Platform, one or more Investors shall commit to make purchases of such equity interests in an aggregate amount (such aggregate amount, the "*Commitment*") equal to at least the Minimum Commitment Amount, then subject to the terms and conditions set forth herein, the other Loan Documents and the Disclosures, Lender agrees to make a loan (the "*Loan*") to Borrower with a principal balance equal to the Commitment, and Borrower promises to pay to Lender the amount of the Loan and all other Obligations now or hereafter owing to Lender under the Loan Documents; *provided* that Borrower may withdraw such Final Loan Request if it provides prior written notice of such withdrawal to Lender such that Lender is able to terminate such Final Loan Request prior to one or more Investors making purchase commitments equal to or in excess of the Minimum Commitment Amount. If the Commitment of the Investors at the end of such 30 day period is less than the Minimum Commitment Amount, then the Final Loan Request shall automatically be withdrawn from the Platform (provided that Borrower may re-submit the Loan Request to Lender).

(d)    *Notes; Guaranty*. In addition to and subject to the foregoing, prior to making the Loan, Lender shall have received, in each case in form and substance satisfactory to Lender:

(i)    One or more Notes executed by Borrower or by Borrower's attorney-in-fact in favor of Lender, the amount of which shall equal the total Loan amount;

(ii)    One or more Guaranties executed in favor of Lender, as required by Lender or Manager; and

(iii)    Such other documents and evidence of the completion of such other matters as Lender may request.

(e)    *Funding; Origination Fee*. Borrower authorizes Lender to disburse the net Loan proceeds by Automated Clearing House ("*ACH*") transfer to Borrower's designated account (the "*Designated Account*"). Borrower acknowledges and agrees that the net Loan proceeds disbursed to such account shall be equal to the Commitment less the origination fee payable to Manager equal to 2.0% to 5.0% of the Commitment, as determined by the Manager in its sole discretion (the "*Origination Fee*"), which Origination Fee shall be set forth in the Final Loan Request and shall be subject to **Section 2(j)**; provided that Manager, in its sole discretion, may elect to amortize all or any portion of such Origination Fee over the term, or any portion of the term, of such Loan. Borrower hereby acknowledges that it shall have no right to rescind the Loan or Final Loan Request once one or more Investors have made Commitments equal to or in excess of the Minimum Commitment Amount.

(f)    *Interest*. The principal amount of the Loan shall accrue interest at an annual rate determined by Lender in its sole discretion (the "*Interest Rate*"), which Interest Rate shall be set forth in the Final Loan Request; *provided* that such Interest Rate shall be within the range specified by Borrower in the Initial Loan Request, and, when combined with all fees that may be characterized as interest will not exceed the Maximum Rate; *provided further*, that upon the occurrence and during the continuance of an Event of Default, such interest shall accrue at a rate equal to the Interest Rate plus 5.0% *provided* that such default rate of interest, when combined with all fees that may be characterized as interest, will not exceed the Maximum Rate. All computations of interest shall be made on the basis of a year of 365 days or 366 days, as the case may be, and actual number of days elapsed.

(g)    *Repayment*. Borrower hereby agrees to pay to Lender installments of principal and interest in amounts that will fully amortize the Loan by the Maturity Date, which repayment shall be set forth in the Final Loan Request. Additionally, if Manager elects to amortize any portion of the Origination Fee over the term, or any portion of the term, of the Loan pursuant to Section 2(e), Borrower agrees to pay to Lender, (in addition to the aforementioned payments of principal and interest) equal installments in amounts necessary to fully pay the Origination Fee elected to be amortized by Manager over the amortization period elected by Manager. Borrower hereby authorizes Lender, its agents and affiliates and their respective successors and assigns to debit the Designated Account by ACH transfer for the amount of each such loan payment when due on each such due date. The

DocuSign Envelope ID: 527C64AB-EF2A-405D-BB0D-9B1A307CE78D

foregoing authorization is in addition to, and not in limitation of, any rights of setoff that Lender or its agents, affiliates and their respective successors and assigns may have. Borrower shall have the right to terminate such ACH authorization or to change its Designated Account for such ACH transfers by notifying Lender at least ten (10) business days prior to such termination or change in Designated Account. All payments received by Lender shall be applied to principal and interest as set forth above; provided that, upon the occurrence and during the continuance of an Event of Default, payments shall be applied to the Obligations in Lender's sole discretion. Borrower shall pay in full in immediately available funds the aggregate amount of the Obligations on the earlier of (i) the Maturity Date and (ii) any date on which the Obligations are accelerated in accordance with the terms hereof.

(h)     *Fees.*  Borrower agrees to pay the Origination Fee upon the funding of the Loan as set forth in **Section 2(e)** in accordance with the terms of such Section. Borrower agrees to pay a fee of $20 if any ACH transfers or checks are returned or fail due to insufficient funds or for any other reason. If any payment is more than ten (10) days late, Lender may charge, and if any payment is more than fifteen (15) days late, Lender shall charge, and in each case Borrower agrees to pay, a fee in the amount equal to five percent (5%) of the total amount of such late payment. Borrower agrees that any of the foregoing fees may be collected using ACH transfers initiated by Lender from the Designated Account.

(i)     *Prepayment; Premium.*  Borrower shall have the right to prepay the Loan from time to time; *provided* that, notwithstanding anything to the contrary in this Agreement or any other document, in the event of any such prepayment, (i) Borrower shall pay to Lender a premium in an amount equal the applicable percentage shown in the table below multiplied by the principal amount of the Loan being prepaid and (ii) the amount of such prepayment and the applicable premium shall be paid to Lender in immediately available funds.

| Date of Prepayment | One (1) year Loan | Two (2) year Loan | Three (3) year Loan | Four (4) year Loan | Five (5) year Loan |
|---|---|---|---|---|---|
| Prior to the first anniversary of the Funding Date | 1.0% | 2.0% | 3.0% | 4.0% | 5.0% |
| On or after the first anniversary, but prior to the second anniversary, of the Funding Date | N/A | 1.0% | 2.0% | 3.0% | 4.0% |
| On or after the second anniversary, but prior to the third anniversary, of the Funding Date | N/A | N/A | 1.0% | 2.0% | 3.0% |
| On or after the third anniversary, but prior to the fourth anniversary, of the Funding Date | N/A | N/A | N/A | 1.0% | 2.0% |
| On or after the fourth anniversary, but prior to the fifth anniversary, of the Funding Date | N/A | N/A | N/A | N/A | 1.0% |

(j)     *Maximum Interest.*  Borrower and Lender intend to strictly comply with all applicable laws, including applicable usury laws. Accordingly, the provisions of this **Section 2(j)** shall govern and control over every other provision of this Agreement or any other Loan Document which conflicts or is inconsistent with this **Section 2(j)**, even if such provision declares that it controls. As used in this **Section 2(j)**, the term "interest" includes the aggregate of all charges, fees, benefits or other compensation which constitute interest under applicable law, *provided* that, to the maximum extent permitted by applicable law, (i) any non-principal payment shall be characterized as an expense or as compensation for something other than the use, forbearance or detention of money and not as interest, and (ii) all interest at any time contracted for, reserved, charged or received shall be amortized, prorated, allocated and spread, in equal parts, during the full term of the Obligations. In no event shall Borrower or any other Person be obligated to pay, or Lender have any right or privilege to reserve, receive or retain, (i) any interest in excess of the maximum amount of nonusurious interest permitted under the laws of the State of New York or the applicable laws (if any) of the U.S. or of any other applicable state, or (ii) total interest in excess of the amount which Lender could lawfully have contracted for, reserved, received, retained or charged had the interest been calculated for the full term of the Obligations at the Maximum Rate. On each day, if any, that the interest rate (the "*Stated Rate*") stipulated by this Agreement or any other Loan Document exceeds the Maximum Rate, the rate at which interest shall accrue shall automatically be fixed by operation of this sentence at the Maximum Rate for that day, and shall remain fixed at the Maximum Rate for each day thereafter until the total amount of interest accrued equals the total amount of interest which would have accrued if there were no such ceiling rate as is imposed by this sentence. Thereafter, interest shall accrue at the Stated Rate unless and until the Stated Rate again exceeds the Maximum Rate when the provisions of the immediately preceding sentence shall again automatically operate to limit the interest accrual rate. None of the terms and provisions contained in this Agreement or in any other Loan Document which directly or indirectly relate to interest shall ever be construed without reference to this **Section 2(j)**, or be construed to create a contract to pay for the use, forbearance or detention of money at an interest rate in excess of the Maximum Rate. If the term of any Obligation is shortened by reason of acceleration of maturity as a result of any Event of Default or by any other cause, or by reason of any required or permitted prepayment, and if for that (or any other) reason Lender at any time, including but not limited to, the stated maturity, is owed or receives (and/or has received) interest in excess of interest calculated at the Maximum Rate, then and in any such event all of any such excess interest shall be canceled automatically as of the date of such acceleration, prepayment or other event which produces the excess, and, if such excess interest has been paid to Lender, it shall be credited pro tanto against the outstanding principal balance of Borrower's obligations to Lender, effective as of the date or dates when the event occurs which causes it to be excess interest, until such excess is exhausted or all of such principal has been fully paid and satisfied, whichever occurs first, and any remaining balance of such excess shall be promptly refunded to its payor.

**SECTION 3**     Security Interest.  As security for the payment and performance of the Obligations (whether now existing or hereafter arising), Borrower hereby grants to Lender a security interest in all of Borrower's right, title and interest in, to and under all of its personal property, wherever located and whether now existing or owned or hereafter acquired or arising, including all accounts, cash and cash equivalents, chattel paper, commercial tort claims identified in writing to Lender, contracts, deposit accounts, documents, equipment, fixtures, general intangibles, goods, instruments, intellectual property, inventory, investment property, letter-of-credit rights, receivables, securities accounts and all other items, kinds and types of personal property, tangible or intangible, of whatever nature, all books and records pertaining to the Collateral and all products, proceeds (including, without limitation, proceeds of insurance covering any of the foregoing or other property resulting from the sale, exchange, collection, or other disposition of any of the foregoing) and supporting obligations of any and all of the foregoing (collectively, the "*Collateral*"). This Agreement shall create a continuing security interest in the Collateral which shall remain in effect until terminated in accordance with Section 14.

**SECTION 4**     **Financing Statements; Rights of Lender; Authorization and Appointment.**

(a)     Borrower hereby authorizes Lender to file at any time and from time to time any financing statements and other applicable documents and instruments (including, without limitation, with respect to intellectual property) describing the Collateral, and Borrower shall execute and deliver to Lender, and Borrower hereby authorizes Lender to file (with or without Borrower's signature), at any time and from time to time, all amendments to financing statements, assignments, continuation financing statements, termination statements and other documents and instruments, in form reasonably satisfactory to Lender, as Lender may reasonably request, to perfect and continue perfected, maintain the priority of or provide notice of the security interest of Lender in the Collateral and to accomplish the purposes of this Agreement. Without limiting the generality of the foregoing, Borrower ratifies and authorizes the filing by Lender of any financing statements and any other applicable documents or instruments filed prior to the date hereof.

(b)     Lender shall have the right to, in the name of Borrower, or in the name of Lender or otherwise, and Borrower hereby constitutes and appoints Lender (and any of Lender's officers, employees or agents designated by Lender) as Borrower's true and lawful attorney-in-fact, with full power and authority to execute any and all such documents and instruments (including without limitation any endorsement to any certificate of title or ownership or other document), make such filings, and do any and all acts and things for and on behalf of Borrower, which Lender may deem reasonably necessary or advisable to maintain, protect, perfect, realize upon and preserve the Collateral and Lender's security interest therein and to accomplish the purposes of this Agreement. Lender agrees that, except upon the occurrence and during the continuance of an Event of Default, it shall not exercise the power of attorney, or any rights granted to Lender, pursuant to this Section: The foregoing power of attorney is coupled with an interest and irrevocable so long as the Obligations have not been paid and performed in full. Borrower hereby ratifies, to the extent permitted by law, all that Lender shall lawfully and in good faith do or cause to be done by virtue of and in compliance with this Section.

**SECTION 5**     **Representations and Warranties.** Borrower represents and warrants to Lender that:

(a)     *Existence, Qualification and Power*. Borrower is duly organized or formed, as the case may be, validly existing and in good standing under the laws of the jurisdiction of its incorporation or formation, as applicable, and has all requisite power and authority to execute, deliver and perform its obligations under this Agreement and the other Loan Documents to which it is a party. Borrower is qualified and licensed to do business and is in good standing in each jurisdiction in which the failure so to qualify or be in good standing could reasonably be expected to have a Material Adverse Effect on Borrower, and has all requisite power and authority to own its assets and carry on its business.

(b)     *Authorization; No Contravention*. The execution, delivery and performance by Borrower of this Agreement and each other Loan Document to which Borrower is a party have been duly authorized by all necessary action of Borrower and do not and will not: (i) contravene the terms of the articles or certificate of incorporation, or bylaws, or other applicable organizational documents, of Borrower, or result in a breach of or constitute a default under any material lease, instrument, contract or other agreement to which Borrower is a party or by which it or its properties may be bound or affected; or (ii) violate any provision of any law, rule, regulation, order, judgment, decree or the like binding on or affecting Borrower.

(c)     *Enforceability*. This Agreement and each other Loan Document to which Borrower is a party constitutes the legal, valid and binding obligation of Borrower, enforceable against Borrower in accordance with its terms.

(d)     *Governmental; Other Authorization*. No authorization, consent, approval, license, exemption of, or filing or registration with, any governmental agency or authority, or approval or consent of any other person or entity, is required for the due execution, delivery or performance by Borrower of this Agreement or any other Loan Document to which Borrower is a party, except for recordings or filings in connection with the perfection of the Liens on the Collateral in favor of Lender.

(e)     *No Breach*. Borrower is not in breach of any obligation with respect to borrowed money, any purchase money obligation or any other material lease, commitment, contract, instrument or obligation.

(f)     *Litigation*. There are no actions, suits or proceedings pending or, to the best of Borrower's knowledge, threatened against or affecting Borrower or its properties before any governmental agency or authority or arbitrator that, if determined adversely to Borrower, could reasonably be expected to have a Material Adverse Effect on Borrower.

(g)     *Taxes*. Borrower has duly filed all tax and information returns required to be filed, and has paid all taxes, fees, assessments and other governmental charges or levies that have become due and payable, except to the extent such taxes or other charges are being contested in good faith and are adequately reserved against in accordance with GAAP.

(h)     *Permits*. Borrower possesses all material permits, franchises, licenses, patents, trademarks, trade names, service marks, copyrights and all rights with respect thereto, free from burdensome restrictions, that are necessary for the ownership, maintenance and operation of its business and Borrower is not in material violation of any rights of others with respect to the foregoing.

(i)     *Insurance*. The properties of Borrower are insured, with financially sound and reputable insurance companies, in such amounts, with such deductibles and covering such risks as is customarily carried by companies engaged in similar businesses and owning similar properties in the localities where Borrower operates.

(j)     *Ownership of Property*. Borrower has good and marketable title to, or valid and subsisting leasehold interests in, its properties and assets, including all property forming a part of the Collateral, and there is no Lien upon or with respect to any of such properties or assets, including any of the Collateral, except for Permitted Liens.

(k)     *Solvency*. (i) The present fair saleable value of the property of Borrower is not less than the amount that will be required to pay the probable liability of Borrower on its debts as they become absolute and matured; (ii) Borrower is able to realize upon its property and pay its debts and other liabilities (including disputed, contingent and unliquidated liabilities) as they mature in the normal course of business; (iii) Borrower does not intend to, and does not believe that it will, incur debts or liabilities beyond Borrower's ability to pay as such debts and liabilities mature; and (iv) Borrower is not engaged in business or a transaction, and is not about to engage in business or a transaction, for which Borrower's property would constitute unreasonably small capital.

(l)     *Compliance with Laws*. Borrower is in compliance with all material laws, rules, regulations, orders and decrees which are applicable to it or its properties.

(m)     *Location*. Borrower's (i) chief executive office and principal place of business (as of the date of this Agreement), (ii) jurisdiction of organization and organizational identification number and (iii) other locations where Borrower conducts any material business or keeps any material portion of the Collateral (as of the date of this Agreement), are each as previously disclosed to Lender in the Final Loan Request. Borrower's exact legal name is as set forth in its signature to this Agreement.

(n)     *Collateral*. Borrower has rights in or the power to transfer the Collateral, and Borrower is the sole and complete owner of the Collateral, free from any Lien other than Permitted Liens. Lender has a first priority (subject to Permitted Liens) security interest in the Collateral and such first priority security interest is perfected, in the case of any Collateral in which a security interest may be perfected by filing a UCC-1 financing statement under Article 9 of the UCC.

(o)     *Financial Statements and Projections*. All financial statements of Borrower (including, without limitation, any balance sheets, income statements and statements of shareholders' equity and cash flows) delivered to Lender on or prior to the date hereof are complete and correct and fairly present the financial condition of Borrower as of the dates thereof and the results of operations of Borrower for the periods covered by such statements, subject to normal year-end adjustments and the absence of notes. Any and all financial projections and forecasts delivered to Lender on or prior to the date hereof represent Borrower's best estimates and assumptions as to future performance, which Borrower believes in good faith to be fair and reasonable as of the time made in light of current and reasonable foreseeable business conditions.

(p)     *Disclosure*. None of the representations or warranties made by Borrower in this Agreement or any other Loan Document or other item of information with respect to Borrower (including such exhibits or reports furnished by or on behalf of Borrower to Lender in connection with this Agreement or any other Loan Document) contains any untrue statement of a material fact or omits any material fact required to be stated therein or necessary to make the statements made therein, in the light of the circumstances under which they are made, not misleading.

(q)     *Set-off; Counterclaim*. To the best of Borrower's knowledge, there is no claim, defense, counterclaim or set-off which could be asserted by or is available to Borrower against Lender.

**SECTION 6**     **Affirmative Covenants.** So long as any of the Obligations remain unsatisfied (other than contingent indemnification Obligations for which no claim has been made), Borrower agrees that:

(a)     *Preservation of Existence, Etc.* Borrower shall maintain and preserve its legal existence, its rights to transact business and all other rights, franchises and privileges necessary or desirable in the normal course of its business and operations and the ownership of its properties.

(b) *Taxes.* Borrower shall pay and discharge all taxes, fees, assessments and governmental charges or levies imposed upon it or upon its properties or assets prior to the date on which penalties attach thereto, and all lawful claims for labor, materials and supplies which, if unpaid, might become a Lien upon any properties or assets of Borrower, except to the extent such taxes, fees, assessments or governmental charges or levies, or such claims, are being contested in good faith by appropriate proceedings and are adequately reserved against in accordance with GAAP.

(c) *Insurance.* Borrower shall carry and maintain in full force and effect, at its own expense and with financially sound and reputable insurance companies, fire and other risk insurance, liability insurance, in each case, in such amounts, with such deductibles and covering such risks as is customarily carried by companies engaged in the same or similar businesses and owning similar properties in the localities where Borrower operates. All insurance policies required under this section shall name Lender as an additional named insured and as a lender loss payee. Any proceeds of insurance referred to in this section which are paid to Lender shall be, at the option of Lender in its sole and absolute discretion, either (i) applied to rebuild, restore or replace the damaged or destroyed property, or (ii) applied to the payment or prepayment of the Obligations.

(d) *Legal Compliance.* Borrower shall comply in all material respects with the requirements of all applicable laws, rules, regulations and orders of any court or governmental department, commission, board, bureau, agency, or other instrumentality, domestic or foreign, and the terms of any indenture, contract or other instrument to which it may be a party or under which it or its properties may be bound.

(e) *Maintenance of Properties.* Borrower shall maintain and preserve all of its properties necessary or useful in the proper conduct of its business in good working order and condition in accordance with the general practice of other entities of similar character and size, ordinary wear and tear excepted.

(f) *Preservation of Collateral.* Borrower shall do and perform all reasonable acts that may be necessary and appropriate to maintain, preserve and protect the Collateral.

(g) *Lender's Interest in Collateral.* Borrower shall not remove any Collateral from any location previously disclosed to Lender in the Final Loan Request or any other location without Lender's prior written consent, except for relocations (i) for maintenance and repair or transportation to another permitted location or (ii) of vehicles. Borrower shall maintain Lender's first priority (subject to Permitted Liens) security interest in the Collateral and ensure that Lender's first priority security interest remains perfected, in the case of any Collateral in which a security interest may be perfected by filing a UCC-1 financing statement under Article 9 of the UCC.

(h) *Inspection Rights.* Borrower shall at any reasonable time with reasonable notice permit Lender or its agents or representatives to visit and inspect any of Borrower's property and to examine and make copies of and abstracts from the books and records of Borrower and to discuss the business affairs, finances and accounts of Borrower.

(i) *Notices.* Borrower shall provide Lender with prior written notice of: (A) any change in its name or any name under which Borrower does business; (B) any change in its registration as an organization (or any new such registration); (C) any change in its identity or structure in any manner which might make any financing statement filed hereunder incorrect or misleading or (D) any change in its jurisdiction of organization.

(j) *Reporting.* Borrower shall furnish to Lender:
(i) as soon as practicable (and in any event within 30 days) after the end of each fiscal quarter and fiscal year, financial statements of Borrower for such fiscal quarter or fiscal year, as applicable (including, without limitation, any balance sheets, income statements and statements of shareholders' equity and cash flows); and
(ii) such other statements, lists of property and accounts, budgets, forecasts, projections, reports, or other information respecting the operations, properties, business or condition (financial or otherwise) of Borrower (including with respect to the Collateral) as Lender may from time to time reasonably request.

(k) *Commercial Tort Claims.* If Borrower acquires any commercial tort claim, Borrower shall promptly deliver to Lender a written description of such commercial tort claim and shall deliver a written agreement, granting to Lender a perfected security interest in all of its right, title and interest in and to such commercial tort claim, as security for the Obligations.

**SECTION 7** **Negative Covenants.** So long as any of the Obligations remain unsatisfied (other than contingent indemnification Obligations for which no claim has been made), Borrower agrees that:

(a) *Indebtedness.* Borrower shall not create, incur, assume or otherwise become liable for or suffer to exist any indebtedness for borrowed money, other than: (i) the Obligations; (ii) Indebtedness of the Borrower existing on the date hereof and disclosed to the Lender in writing or extensions, renewals and refinancings of such indebtedness (provided that the principal amount of such Indebtedness being extended, renewed or refinanced does not increase and the terms thereof are not modified to impose more burdensome terms upon Borrower); and (iii) capital leases or other Indebtedness incurred solely to acquire equipment, computers, software or implement tenant improvements.

(b) *Liens.* Borrower shall not create, incur, assume or suffer to exist any Lien upon or with respect to any of its properties, revenues or assets, whether now owned or hereafter acquired, other than Permitted Liens.

(c) *Investments.* Borrower shall not directly or indirectly purchase or otherwise acquire the capital stock or other equity interests, assets (constituting a business unit), obligations or other securities of or any interest in any Person, or extend any credit to, guarantee the obligations of or make any additional investments in any Person, or make or hold any other loan to or other investment in any Person, other than (i) extensions of credit in the nature of accounts receivable or notes receivable arising from the sales of goods or services in the ordinary course of business and (ii) short term, investment grade money market instruments, in accordance with Borrower's usual and customary treasury management policies.

(d) *Restricted Payments.* Borrower shall not declare or pay any dividends in respect of Borrower's capital stock or other equity interest, or purchase, redeem, retire or otherwise acquire for value any of its capital stock or other equity interests now or hereafter outstanding, return any capital to its shareholders as such, or make any distribution of assets to its shareholders as such, or permit any of its Subsidiaries to purchase, redeem, retire, or otherwise acquire for value any stock of Borrower.

(e) *Burdensome Agreements.* Borrower shall not enter into or cause, suffer or permit to exist any agreement with any Person which prohibits or limits the ability of Borrower to create, incur, assume or suffer to exist any Lien upon any of its property, assets or revenues, whether now owned or hereafter acquired.

(f) *Nature of Business.* Borrower shall not engage in any material line of business substantially different from those lines of business carried on by it and previously disclosed to Lender prior to the date hereof.

(g) *Fundamental Changes.* Borrower shall not merge with or consolidate into, or acquire all or substantially all of the assets of, any Person, or sell, transfer, lease or otherwise dispose of (whether in one transaction or in a series of transactions) all or substantially all of its assets.

(h) *Asset Dispositions.* Borrower shall not sell, transfer, lease, or otherwise dispose of, or part with control of (whether in one transaction or a series of transactions) any assets (including any shares of stock in any Person), except (i) sales or other dispositions of inventory, and the license, sublicense and grant of distribution and similar rights, in the ordinary course of business; (ii) sales or other dispositions of assets which have become worn out or obsolete or which are promptly being replaced; and (iii) liquidation or dissolution of any dormant or shell Subsidiary.

(i) *Affiliate Transactions.* Borrower shall not, directly or indirectly, enter into any transaction with any affiliate that is on terms less favorable to the Borrower than would be obtained in an arm's length transaction with a non-affiliated Person.

(j) *Use of Funds.* Borrower shall not use any of the proceeds of the Loan directly or indirectly (i) to pay any post-secondary educational expenses, including, without limitation, any tuition, fees, books, supplies, room and board, transportation or similar or related expenses, (ii) to purchase or carry any securities, (iii) to fund or otherwise support any illegal activities, (iv) for personal, family, household, or agricultural purposes, or (v) for any other Person or purpose or otherwise inconsistent with the purpose(s) set forth in the Loan Request corresponding to such Loan.

(k) *USA Patriot Act.* Borrower shall not (a) be or become subject at any time to any law, regulation, or list of any government agency (including, without limitation, the U.S. Office of Foreign Asset Control list) that prohibits or limits Lender from making any advance or extension of credit

to Borrower or from otherwise conducting business with Borrower or (b) fail to provide documentary and other evidence of Borrower's or its corporate officers' identities as may be requested by Lender at any time to enable Lender to verify Borrower's identity or to comply with any applicable law or regulation, including, without limitation, Section 326 of the USA Patriot Act of 2001, 31 U.S.C. §5318.

**SECTION 8**     **Events of Default.** Any of the following events which shall occur shall constitute an "*Event of Default*":

(a)     Borrower shall fail to pay when due any amount of principal, interest or the Origination Fee hereunder or other amount payable hereunder.

(b)     Any representation or warranty by Borrower under or in connection with any Loan Document or any other agreement or document delivered to Lender shall prove to have been incorrect in any material respect when made or deemed made.

(c)     Borrower shall fail to perform or observe any term, covenant or agreement contained in **Section 6(a), (c)** or **(g)**, or **Section 7** or any other term, covenant, or agreement the breach of which Lender determines is not capable of being remedied.

(d)     Borrower shall fail to perform or observe any other obligation of Borrower contained in any Loan Document and any such failure shall remain unremedied for a period of 10 days from the occurrence thereof (unless Lender determines that such failure is not capable of remedy).

(e)     (i) Borrower or any Guarantor shall admit in writing its inability to, or shall fail generally or be generally unable to, pay its debts (including its payrolls) as such debts become due, or shall make a general assignment for the benefit of creditors, (ii) Borrower or any Guarantor institutes or consents to the institution of any proceeding under any Debtor Relief Law, or makes an assignment for the benefit of creditors, or applies for or consents to the appointment of a receiver, trustee, custodian, conservator, liquidator, rehabilitator, administrator, administrative receiver or similar officer for it or for all or any material part of its property, or (iii) any receiver, trustee, custodian, conservator, liquidator, rehabilitator, administrator, administrative receiver or similar officer is appointed for Borrower or any Guarantor without the application or consent of such Person and the appointment continues undischarged or unstayed for thirty (30) calendar days, or any proceeding under any Debtor Relief Law relating to any such person or to all or any material part of its property is instituted without the consent of such Person and continues undismissed or unstayed for thirty (30) calendar days, or an order for relief is entered in any such proceeding;

(f)     Borrower or any Guarantor shall (i) liquidate, wind up or dissolve (or suffer any liquidation, wind-up or dissolution), (ii) suspend its operations other than in the ordinary course of business, or (iii) take any action to authorize any of the foregoing actions or events.

(g)     Borrower or any Guarantor shall fail (i) to make any payment of any principal of, or interest or premium on, any indebtedness for borrowed money (other than the Loan), in an aggregate amount (including undrawn committed or available amounts), when due (whether by scheduled maturity, required prepayment, acceleration, demand or otherwise) and such failure shall continue after the applicable grace period, if any, specified in the agreement or instrument relating to such indebtedness as of the date of such failure, or (ii) to perform or observe any term, covenant or condition on its part to be performed or observed under any agreement or instrument relating to any such indebtedness, when required to be performed or observed, and such failure shall continue after the applicable grace period, if any, specified in such agreement or instrument, if the effect of such failure to perform or observe is to accelerate, or to permit the acceleration of, the maturity of such indebtedness; or any such indebtedness shall be declared to be due and payable, or required to be prepaid (other than by a regularly scheduled required prepayment), prior to the stated maturity thereof;

(h)     (i) A final judgment or order for the payment of money in excess of $10,000 which is not fully covered by third-party insurance shall be rendered against Borrower or any Guarantor, or (ii) any non-monetary judgment or order shall be rendered against Borrower or any Guarantor which has or could reasonably be expected to have a Material Adverse Effect on Borrower; and there shall be any period of 30 consecutive days during which such judgment continues unsatisfied or during which a stay of enforcement of such judgment or order, by reason of a pending appeal or otherwise, shall not be in effect;

(i)     Any Guarantor shall fail to perform or observe any term, covenant or agreement contained in its Guaranty on its part to be performed or observed and any such failure shall remain unremedied beyond the grace period, if any, in such Guaranty or any other Loan Document to which such Guarantor is a party (unless Lender determines that such failure is not capable of remedy, in which case such grace period shall not be applicable); or any Guaranty or any other document or instrument relating thereto shall for any reason be revoked or invalidated, or otherwise cease to be in full force and effect, or any Guarantor or any other Person shall contest in any manner the validity or enforceability thereof or deny that it has any further liability or obligation thereunder; or

(j)     Any of the Collateral Documents shall for any reason be revoked or invalidated, or otherwise cease to be in full force and effect, or cease to create a valid and perfected first priority (subject to Permitted Liens) Lien in any of the Collateral purported to be covered thereby, or Borrower or any other Person shall contest in any manner the validity or enforceability thereof, or Borrower or any other Person shall deny that it has any further liability or obligation thereunder.

(k)     There is a change in the record or direct or indirect beneficial ownership or control of more than 20% of the voting capital stock of and other voting ownership interests in Borrower compared to such ownership as of the date of this Agreement without the prior written consent of Lender.

**SECTION 9**     **Remedies.**

(a)     Upon the occurrence and during the continuance of any Event of Default, Lender may without notice or demand declare the entire unpaid principal amount of the Loans, all interest accrued and unpaid thereon and all other amounts payable hereunder to be forthwith due and payable (*provided that*, upon the occurrence of any Event of Default under **Section 8(e)** or **(f)**, such acceleration shall be automatic), whereupon all unpaid principal of the Loans, all such accrued interest and all such other amounts shall become and be forthwith due and payable, without presentment, demand, protest, notice of protest and non-payment, notice of default, notice of acceleration or intention to accelerate, or further notice of any kind, all of which are hereby expressly waived by Borrower, and exercise any or all of Lender's rights and remedies under the Loan Documents, the UCC and other applicable law.

(b)     For the purpose of enabling Lender to exercise its rights and remedies under this **Section 9** or otherwise in connection with this Agreement, Borrower hereby grants to Lender an irrevocable, non-exclusive and assignable license (exercisable without payment or royalty or other compensation to Borrower) to use, license or sublicense any intellectual property Collateral.

(c)     Lender shall not have any obligation to clean up or otherwise prepare the Collateral for sale. Lender has no obligation to attempt to satisfy the Obligations by collecting them from any other Person liable for them, and Lender may release, modify or waive any Collateral provided by any other Person to secure any of the Obligations, all without affecting Lender's rights against Borrower. Borrower waives any right it may have to require Lender to pursue any third Person for any of the Obligations. Lender may comply with any applicable state or federal law requirements in connection with a disposition of the Collateral and compliance will not be considered adversely to affect the commercial reasonableness of any sale of the Collateral. Lender may sell the Collateral without giving any warranties as to the Collateral. Lender may specifically disclaim any warranties of title or the like. This procedure will not be considered adversely to affect the commercial reasonableness of any sale of the Collateral. If Lender sells any of the Collateral upon credit, Borrower will be credited only with payments actually made by the purchaser, received by Lender and applied to the indebtedness of the purchaser. In the event the purchaser fails to pay for the Collateral, Lender may resell the Collateral and Borrower shall be credited with the proceeds of the sale.

(d)     The cash proceeds actually received from the sale or other disposition or collection of Collateral, and any other amounts received in respect of the Collateral the application of which is not otherwise provided for herein, shall be applied *first*, to the payment of the reasonable costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) of Lender and Manager in exercising or enforcing its rights hereunder and in collecting or attempting to collect any of the Collateral, and to the payment of all other costs, fees and expenses (including, without limitation, reasonable attorneys' fees and expenses) reimbursable by Borrower under the Loan Documents and indemnification obligations of Borrower under the Loan Documents; and *second*, to the payment of the Obligations. Any surplus thereof which exists after payment and performance in full of the

Obligations shall be promptly paid over to Borrower or otherwise disposed of in accordance with the UCC or other applicable law. Borrower shall remain liable to Lender for any deficiency which exists after any sale or other disposition or collection of Collateral.

(e) If Borrower shall fail to do any act or thing which it has covenanted to do under this Agreement or any of the Loan Documents, Lender may (but shall not be obligated to) do the same or cause it to be done either in the name of Lender or in the name and on behalf of Borrower, at Borrower's expense, and Borrower hereby irrevocably authorizes Lender so to act.

**SECTION 10** **Certain Waivers.** Borrower waives, to the fullest extent permitted by law, (i) any right of redemption with respect to the Collateral, whether before or after sale hereunder, and all rights, if any, of marshalling of the Collateral or other collateral or security for the Obligations; (ii) any right to require Lender (A) to proceed against any Person, (B) to exhaust any other collateral or security for any of the Obligations, (C) to pursue any remedy in Lender's power, or (D) to make or give any presentments, demands for performance, notices of nonperformance, protests, notices of protests, notices of dishonor, notice of acceleration, or notice of intent to accelerate in connection with any of the Collateral; and (iii) all claims, damages, and demands against Lender arising out of the repossession, retention, sale or application of the proceeds of any sale of the Collateral.

**SECTION 11** **Expenses.** Borrower agrees to pay on demand all fees and expenses (including, without limitation, reasonable attorneys' fees and expenses) of Lender and Manager in connection with any Event of Default, any enforcement or attempted enforcement of, and the protection or preservation of any rights under, any Loan Document and any out-of-court workout or other refinancing or restructuring or in any bankruptcy case, including, without limitation, any and all losses, costs, and expenses sustained by Lender or Manager as a result of any failure of Borrower to perform or observe its obligations contained in any Loan Document.

**SECTION 12** **Indemnification.** Borrower shall indemnify and hold harmless Lender, Manager, their agents and affiliates and each of their respective officers, directors, employees, agents, partners, attorneys, accountants, trustees and advisors (collectively, the "*Indemnitees*") from and against any and all liabilities, losses, damages, claims and expenses (including reasonable attorney's fees and expenses) of any kind or nature whatsoever which may at any time be imposed on, incurred by or asserted against any such Indemnitee in any way relating to or arising out of or in connection with the execution, delivery, enforcement, performance or administration of any Loan Document or any other agreement, instrument or document delivered in connection therewith or the transactions contemplated hereby or thereby, any Loan or the use or proposed use of the proceeds therefrom, or any actual or prospective claim, litigation, investigation or proceeding relating to any of the foregoing, whether based on contract, tort or any other theory and regardless of whether any Indemnitee is a party thereto; *provided that* such indemnity shall not, as to any Indemnitee, be available to the extent such liabilities, losses, damages, claims and expenses result solely from the gross negligence or willful misconduct of such Indemnitee, in each case, as determined by a final, non-appealable court of competent jurisdiction. BORROWER AND LENDER EXPRESSLY INTEND THAT THE FOREGOING INDEMNITY SHALL COVER, AND THAT BORROWER SHALL INDEMNIFY AND HOLD THE INDEMNIFIED PARTIES HARMLESS FROM AND AGAINST, COSTS, EXPENSES AND LOSSES SUFFERED AS A RESULT OF THE NEGLIGENCE OF ANY INDEMNITEE.

**SECTION 13** **Miscellaneous Terms.**

(a) *Amendment.* No amendment or waiver of any provision of this Agreement or any other Loan Document, nor any consent to any departure by Borrower therefrom, shall in any event be effective unless the same shall be in writing and signed by Lender and then such amendment, waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

(b) *Notices.* All notices and other communications to Borrower may be given by email to Borrower's registered email address provided to Lender or posted to the Platform and each such notice or other communication shall be deemed effective and received upon transmission. Borrower acknowledges that it has sole access to such email account and that communications sent to such account may contain confidential or other sensitive information. Borrower shall give Lender prior written notice of any change in such registered email address to be used for notices and other communications. If applicable law requires that Lender give Borrower notice by other means, such notice shall be sent by overnight courier service or by certified or registered mail, postage pre-paid, to the address provided by Borrower to Lender and shall be deemed received, in the case of overnight courier service, on the next Business Day after delivery to such service, and in the case of mailing, on the third day after mailing (or, if such day is a day on which deliveries of mail are not made, on the next succeeding day on which deliveries of mail are made).

(c) *Integration.* This Agreement and the other Loan Documents reflect the entire agreement between Borrower and Lender with respect to the matters set forth therein and supersede any prior agreements, commitments, drafts, communication, discussions and understandings, oral or written, with respect thereto.

(d) *Electronic Signature.* This Agreement and any other Loan Document may be executed by electronic signature as set forth in the Terms of Use delivered to Borrower.

(e) *No Waiver.* No failure on the part of Lender or Manager to exercise, and no delay in exercising, any right, remedy, power or privilege under any Loan Document shall operate as a waiver thereof, nor shall any single or partial exercise of any such right, remedy, power or privilege preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege. The rights and remedies under this Agreement and the other Loan Documents are cumulative and not exclusive of any rights, remedies, powers and privileges that may otherwise be available to Lender or Manager.

(f) *Limitation on Liability; Waiver.* Neither Lender nor Manager shall be liable for any lost profits or special, exemplary, consequential or punitive damages and Borrower hereby waives, to the maximum extent not prohibited by law, any right it may have to claim or recover in any legal action or proceeding any special, exemplary, punitive or consequential damages.

(g) *Payments Set Aside.* To the extent that any payment by or on behalf of Borrower or any Guarantor is made to Lender, or Lender exercises its right of setoff, and such payment or the proceeds of such setoff or any part thereof is subsequently invalidated, declared to be fraudulent or preferential, set aside or required (including pursuant to any settlement entered into by Lender in its discretion) to be repaid to a trustee, receiver or any other Person, in connection with any proceeding under any Debtor Relief Law or otherwise, then to the extent of such recovery, the obligation or part thereof originally intended to be satisfied shall be revived and continued in full force and effect as if such payment had not been made or such setoff had not occurred.

(h) *Severability.* Whenever possible, each provision of this Agreement and the other Loan Documents shall be interpreted in such manner as to be effective and valid under all applicable laws and regulations. If, however, any provision of this Agreement or any other Loan Document shall be prohibited by or invalid under any such law or regulation in any jurisdiction, it shall, as to such jurisdiction, be deemed modified to conform to the minimum requirements of such law or regulation, or, if for any reason it is not deemed so modified, it shall be ineffective and invalid only to the extent of such prohibition or invalidity without affecting the remaining provisions of this Agreement, or the validity or effectiveness of such provision in any other jurisdiction.

(i) *Assignment.* Borrower shall not have the right to assign its rights or obligations under this Agreement or any other Loan Document or any interest herein or therein without the prior written consent of Lender. Lender may sell, assign, transfer or grant participations in all or any portion of Lender's rights and obligations hereunder without limitation. In the event of any such assignment, the assignee shall be deemed the "Lender" for all purposes of this Agreement and any other documents and instruments relating hereto with respect to the rights and obligations assigned to it. Borrower agrees that in connection with any such grant or assignment, Lender may deliver to the prospective participant or assignee any relevant information relating to Borrower.

(j) *Binding Effect.* This Agreement and each other Loan Document shall be binding upon, inure to the benefit of and be enforceable by Borrower, Lender and their respective successors and assigns.

(k) *GOVERNING LAW; WAIVER OF RIGHT TO TRIAL BY JURY.* THIS AGREEMENT AND EACH OF THE OTHER LOAN DOCUMENTS SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAW OF THE STATE OF NEW YORK, WITHOUT

REGARD TO PRINCIPLES OF CONFLICTS OF LAWS THAT WOULD RESULT IN THE APPLICATION OF THE LAWS OF ANY OTHER JURISDICTION; PROVIDED THAT SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW SHALL APPLY. EACH OF BORROWER AND LENDER HEREBY WAIVES ITS RIGHT TO A TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF OR RELATED TO THIS AGREEMENT OR ANY OTHER LOAN DOCUMENT.

IN THE EVENT ANY LEGAL PROCEEDING IS FILED IN A COURT OF THE STATE OF CALIFORNIA (THE "**COURT**") BY OR AGAINST ANY PARTY IN CONNECTION WITH ANY CONTROVERSY, DISPUTE OR CLAIM DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY (EACH, A "**CLAIM**") AND THE WAIVER SET FORTH IN THE PRECEEDING PARAGRAPH IS NOT ENFORCEABLE IN SUCH ACTION OR PROCEEDING, THE BORROWOR HEREBY AGREES, AND LENDER BY ITS ACCEPTANCE HEREOF HEREBY AGREES, AS FOLLOWS:

(1) WITH THE EXCEPTION OF THE MATTERS SPECIFIED IN SUBPARAGRAPH 2 BELOW, ANY CLAIM WILL BE RESOLVED BY A GENERAL REFERENCE PROCEEDING IN ACCORDANCE WITH THE PROVISIONS OF CALIFORNIA CODE OF CIVIL PROCEDURE SECTIONS 638 THROUGH 645.1.

(2) THE FOLLOWING MATTERS SHALL NOT BE SUBJECT TO A REFERENCE PROCEEDING: (A) NON-JUDICIAL FORECLOSURE OF ANY SECURITY INTERESTS IN REAL OR PERSONAL PROPERTY, (B) EXERCISE OF SELF-HELP REMEDIES (INCLUDING SET-OFF), (C) APPOINTMENT OF A RECEIVER AND (D) TEMPORARY, PROVISIONAL OR ANCILLARY REMEDIES (INCLUDING WRITS OF ATTACHMENT, WRITS OF POSSESSION, TEMPORARY RESTRAINING ORDERS OR PRELIMINARY INJUNCTIONS). THIS AGREEMENT DOES NOT LIMIT THE RIGHT OF ANY PARTY TO EXERCISE OR OPPOSE ANY OF THE RIGHTS AND REMEDIES DESCRIBED IN CLAUSES (A) - (D) AND ANY SUCH EXERCISE OR OPPOSITION DOES NOT WAIVE THE RIGHT OF ANY PARTY TO A REFERENCE PROCEEDING PURSUANT TO THIS AGREEMENT.

(3) UPON THE WRITTEN REQUEST OF ANY PARTY, THE PARTIES SHALL SELECT A SINGLE REFEREE, WHO SHALL BE A RETIRED JUDGE OR JUSTICE. IF THE PARTIES DO NOT AGREE UPON A REFEREE WITHIN TEN DAYS OF SUCH WRITTEN REQUEST, THEN, ANY PARTY MAY REQUEST THE COURT TO APPOINT A REFEREE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 640(B). A REQUEST FOR APPOINTMENT OF A REFEREE MAY BE HEARD ON AN EX PARTE OR EXPEDITED BASIS, AND THE PARTIES AGREE THAT IRREPARABLE HARM WOULD RESULT IF EX PARTE RELIEF IS NOT GRANTED.

(4) ALL PROCEEDINGS AND HEARINGS CONDUCTED BEFORE THE REFEREE, EXCEPT FOR TRIAL, SHALL BE CONDUCTED WITHOUT A COURT REPORTER, EXCEPT WHEN ANY PARTY SO REQUESTS, A COURT REPORTER WILL BE USED AND THE REFEREE WILL BE PROVIDED A COURTESY COPY OF THE TRANSCRIPT. THE PARTY MAKING SUCH REQUEST SHALL HAVE THE OBLIGATION TO ARRANGE FOR AND PAY COSTS OF THE COURT REPORTER, PROVIDED THAT SUCH COSTS, ALONG WITH THE REFEREE'S FEES, SHALL ULTIMATELY BE BORNE BY THE PARTY WHO DOES NOT PREVAIL, AS DETERMINED BY THE REFEREE.

(5) THE REFEREE SHALL APPLY THE RULES OF DISCOVERY AND EVIDENCE APPLICABLE TO PROCEEDINGS AT LAW IN THE STATE OF CALIFORNIA TO THE REFERENCE PROCEEDING AND SHALL DETERMINE ALL ISSUES IN ACCORDANCE WITH APPLICABLE LAW. THE REFEREE SHALL BE EMPOWERED TO ENTER EQUITABLE AS WELL AS LEGAL RELIEF AND RULE ON ANY MOTION WHICH WOULD BE AUTHORIZED IN A TRIAL, INCLUDING MOTIONS FOR DEFAULT JUDGMENT OR SUMMARY JUDGMENT. THE REFEREE SHALL REPORT HIS DECISION, WHICH REPORT SHALL ALSO INCLUDE FINDINGS OF FACT AND CONCLUSIONS OF LAW.

(l) Consent to Jurisdiction. Borrower hereby (i) submits to the non-exclusive jurisdiction of the courts of the State of New York sitting in New York City in the Borough of Manhattan and the Federal courts of the United States sitting in the Southern District of New York for the purpose of any action or proceeding arising out of or relating to this Agreement and any other Loan Document, (ii) agrees that all claims in respect of any such action or proceeding may be heard and determined in such courts, (iii) irrevocably waives (to the extent permitted by applicable law) any objection which it now or hereafter may have to the laying of venue of any such action or proceeding brought in any of the foregoing courts, and any objection on the ground that any such action or proceeding in any such court has been brought in an inconvenient forum and (iv) agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner permitted by law. Nothing herein shall limit the right of Lender or Manager to bring any action or proceeding against Borrower or its property in the courts of other jurisdictions.

(m) Co-Borrower Provisions.

(i) *Borrowers as Agents.* Each Co-Borrower irrevocably appoints each other Co-Borrower as its agent and attorney-in-fact with all necessary power any authority to give and receive notices, certificates or demands for and on behalf each Co-Borrower, to act as disbursing agent for receipt of any Loan on behalf of each Co-Borrower and to apply to Lender on behalf of each Co-Borrower for the Loan, any waivers and any consents. This authorization cannot be revoked, and Lender and Manager need not inquire as to each Co-Borrower's authority to act for or on behalf of the other Co-Borrower.

(ii) *Joint and Several Nature of Obligations.* The Loan made to any Co-Borrower shall be deemed to have been made to all Co-Borrowers and each Co-Borrower hereby agrees that it shall be jointly and severally, and unconditionally, obligated to pay all of the Obligations, including the Obligations incurred for the benefit of any other Co-Borrower.

(iii) *General Waivers.* Each Co-Borrower hereby expressly waives (A) diligence, presentment, demand for payment, protest, benefit of any statute of limitations affecting any Co-Borrower's liability under the Loan Documents; (B) discharge due to any disability of any Co-Borrower; (C) any defenses of any Co-Borrower to obligations under the Loan Documents not arising under the express terms of the Loan Documents or from a material breach thereof by Lender or Manager which under applicable law has the effect of discharging any Co-Borrower from the Obligations as to which this Agreement is sought to be enforced; (D) the benefit of any act or omission by Lender or Manager which directly or indirectly results in or aids the discharge of any Co-Borrower from any of the Obligations by operation of law or otherwise; (E) all notices whatsoever, including notice of acceptance of the incurring of the Obligations; (F) any right it may have to require Lender or Manager to disclose to it any information that Lender or Manager may now or hereafter acquire concerning the financial condition or any circumstances that bear on the risk of nonpayment by any other Co-Borrower, including the release of such other Co-Borrower from its Obligations hereunder; and (G) any requirement that Lender or Manager exhaust any right, power or remedy or proceed against the other Co-Borrower or any other security for, or any guarantor of, or any other party liable for, any of the Obligations, or any portion thereof. Each Co-Borrower specifically agrees that it shall not be necessary or required, and the Co-Borrowers shall not be entitled to require, that Lender or Manager (1) file suit or proceed to assert or obtain a claim for personal judgment against any other Co-Borrower for all or any part of the Obligations; (2) make any effort at collection or enforcement of all or any part of the Obligations from any Co-Borrower; (3) foreclose against or seek to realize upon the Collateral or any other security now or hereafter existing for all or any part of the Obligations; (4) file suit or proceed to obtain or assert a claim for personal judgment against any Co-Borrower or any guarantor or other party liable for all or any part of the Obligations; (5) exercise or assert any other right or remedy to which Lender or Manager is or may be entitled in connection with the Obligations or any security or guaranty relating thereto to assert; or (6) file any claim against assets of one Co-Borrower before or as a condition of enforcing the liability of any other Co-Borrower under any Loan Document.

(iv) *Waiver of Specific Rights.* WITHOUT LIMITING THE FOREGOING IN ANY WAY, EACH CO-BORROWER HEREBY IRREVOCABLY WAIVES AND RELEASES TO THE EXTENT PERMITTED BY LAW ANY AND ALL RIGHTS IT MAY HAVE AT ANY TIME (WHETHER ARISING DIRECTLY OR INDIRECTLY, BY OPERATION OF LAW, CONTRACT OR OTHERWISE) TO REQUIRE THE MARSHALING OF ANY

DocuSign Envelope ID: 527C64AB-EF2A-405D-BB0D-9B1A307CE78D

ASSETS OF ANY CO-BORROWER, WHICH RIGHT OF MARSHALING MIGHT OTHERWISE ARISE FROM ANY SUCH PAYMENTS MADE OR OBLIGATIONS PERFORMED.

**SECTION 14** **Termination.** Upon payment and performance in full of all Obligations (other than contingent indemnification Obligations for which no claim has been made), the security interest created under this Agreement automatically shall terminate and Lender shall promptly execute and deliver to Borrower such documents and instruments reasonably requested by Borrower as shall be necessary to evidence termination of all security interests given by Borrower to Lender hereunder.

THIS WRITTEN LOAN AGREEMENT AND THE OTHER LOAN DOCUMENTS BETWEEN BORROWER AND LENDER REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

(a) IN WITNESS WHEREOF, Borrower and Lender have duly executed this Agreement as of the date first written above.

| BORROWER: | Con-Serve Energy Inc. | LENDER: | MyBusinessLoan.com LLC |
|---|---|---|---|
| | | By: | Dealstruck, Inc., its Manager |
| | *DocuSigned by: Conor McInerney* | | *DocuSigned by: Rudy Navarro* |
| By: | 460C243CCB2648D... | By: | 26DE72E184ED457 |
| Name: | Conor McInerney | Name: | Rudy Navarro |
| Title: | President | Title: | Vice President |